## TERRELL v. SCOTT et al.

No. 17213.    Opinion Filed Sept. 27, 1927.

Rehearing Denied Jan. 17, 1928.

(Syllabus.)

1. **Indians—Validity of Mortgage on Inherited Land by Full-Blood Indian Approved by County Court.**

A mortgage executed by a full-blood Choctaw Indian upon his interest in inherited lands under the provisions of section 9 of· the Act of Congress of May 27, 1908, when approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, is valid and binding, and may be foreclosed.

2. **Mortgages—Validity as Against Innocent Purchaser Where Deposited for Record Though Improperly Indexed.**

When the holder of a valid mortgage, properly executed, deposits the same with the proper officer for record, although the same is not indexed as required by law, he is protected against a subsequent good-faith purchaser without actual notice.

Commissioners' Opinion, Division No. 1.

Error from District Court, Haskell County; D. C. McCurtain, Judge.

Action by R. J. Terrell to foreclose a mortgage against Cephus W. Scott and E. D. Means. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Fred H. Fannin and E. O. Clark, for plaintiff in error.

E. D. Means, for defendants in error.

FOSTER, C. On May 29, 1923, Cephus W. Scott, an enrolled full-blood Choctaw Indian, owner, as heir of an undivided one-half interest in the allotment of Sallie Christy, a deceased full-blood Choctaw, executed a mortgage covering said interest,

which mortgage was approved by the county court having jurisdiction of the estate of the said deceased and upon the same date filed for record in the office of the county clerk of the county wherein the land was situated, but through error the said mortgage, although spread of record, was not properly indexed.

Subsequent to the execution of the said mortgage the lands were, in pursuance of a judicial decree, partitioned, and the said Scott received in lieu of his undivided interest an aliquot part of said lands in kind, which he thereafter, for valuable consideration and with proper approval by the county court, conveyed to his codefendant, E. D. Means, who was without actual knowledge of the prior mortgage.

Upon suit by the holder of the mortgage to foreclose the same against the maker and his grantee, the trial court gave judgment against the mortgagor for the amount of the indebtedness, but decreed the mortgage to be invalid and upon proper prayer canceled the mortgage.

The questions presented in this appeal are as follows:

(1) Whether a full-blood Choctaw Indian, as owner, could execute a valid mortgage on lands inherited from a deceased full-blood allottee when the same is approved by the proper county court; and, if so:

(2) Whether such mortgage filed and recorded, but not indexed in the office of the county clerk as required by law, under the circumstances stated, would take priority over a conveyance subsequently made.

The defendants in error contend that a mortgage, in legal effect being merely a lien, is not such a conveyance as is contemplated by section 9 of the Act of Congress of May 27, 1908, as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land; provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

This contention loses sight of the fact that the power of the owner over his property, in this case, the jus disponendi, is not derived from the act in question, but exists as an incident to his ownership, and is only circumscribed to the extent the act may restrict the exercise thereof. In other words,

we do not look to the act as the source of his right, but for the restrictions thereon.

Considering the question from this angle, it follows that if the mortgage is not a conveyance in contemplation of the act, there is no restriction upon the owner's power to execute the same, and no court approval would be required to give the same effect. However, considering the purpose, as well as the language of the act, it is evident that a mortgage, which may properly be classed as a conveyance, as the term is used therein, is clearly within the purview of the act, and the same to be valid must be approved.

This construction of the Act of Congress of May 27, 1908, in our opinion, is supported by many decisions both state and federal. The first part of section 9 removes all restrictions on alienation, and, but for the proviso, the full-blood heir could convey, mortgage or dispose of his property as any other citizen. The restriction therefore becomes personal to the full-blood Indian heir, and is not a restriction upon the land. Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259. At page 208, in this case, it is stated:

"Since said restrictions are personal to the full-blood Indians and do not run with the land, such inherited land in the hands of full-blood Indians is not restricted land within the meaning of the term as found in the proviso of section 6."

The land being unrestricted, as the term is otherwise used in said act, he becomes the absolute owner except as to his personal restriction that "any conveyance must be approved." He can handle his land the same as any person sui juris, with the only restriction that certain acts of his must have the approval of a federal agency—in this case, the county court.

By the terms of the act he is not given specific power to lease his land, but this court, as we'l as the federal courts, has repeatedly held that an oil and gas lease is a conveyance under the meaning of this act, and, when approved by the proper county court, is valid. U. S. v. Gypsy Oil Co., 10 Fed. (2d Ed.) 487; Pluto Oil & Gas Co. v. Miller, 95 Okla. 222, 219 Pac. 303.

In the case of U. S. v. Gypsy Oil Co., supra, the court, in the body of the opinion, uses the following language:

"The right to convey the whole includes the right to convey the lesser interest by oil and gas lease."

Does the right to convey, as used in the Act of May 27, 1908, include the right to mortgage? Under both federal and state decisions we believe that the policy of our courts in construing this word, under similar circumstances, justifies our conclusion that a conveyance so used includes a mortgage.

In the case of Landrum v. Graham, 22 Okla. 458, 98 Pac. 432, Judge Turner in construing the Act of Congress of July 1, 1902, which restricted the right of certain class of Indians to mortgage, convey or alienate their property for a term of five years, held that, under the Act of April 21, 1904, which removed all restrictions on said class of Indians, the restrictions as to a mortgage were removed, although the term "mortgage" was not used in the act of 1904. In the body of the opinion Judge Turner uses the following language:

"If this is not the proper construction and that contended for by plaintiff in error is, then Congress in this instance made use of terms the correct construction of which will inevitably lead to an absurdity in that the greater does not include the lesser—that an allottee as to his surplus lands can alienate it by deed in fee simple, can give it away, can make an absolute alienation, but cannot make a conditional alienation in the way of a mortgage as security for a debt or loan. We decline to adopt such construction."

In the case of Harris v. Lynde-Bowman-Darby Co., 29 Okla. 362, 116 Pac. 808, Judge Williams, speaking for the Supreme Court of this state, upheld the rule announced in the Landrum Case, supra, and uses the following language:

"Certainly the allottee, who is permitted by the removal of his restrictions to convey his land by deed in fee simple forever, for a consideration, cannot be hurt by a construction that permits him to convey such land by mortgage as security for money borrowed, or a good and sufficient consideration. No narrow and restricted construction striking down such security, but one that accords with reason, justice, and honesty, sustaining same, should be adopted."

The last two mentioned cases followed the rule announced by Judge Campbell in the case of Frame v. Bivens, 189 Fed. 785, in which case the Act of April 21, 1904, was being considered by the court. It is specifically held in this case that the right to alienate includes the right to mortgage, as the term is used in the Act of Congress; and that a mortgage under the Act of Congress was a conveyance.

The last paragraph of the opinion reads as follows:

"In my judgment the mortgage in this

case was a conveyance amounting to alienation as that term is used in the Act of April 21, 1904. In view of the class of persons, the character of the land affected by the act, and. the local conditions and circumstances which evidently occasioned this legislation, I cannot conceive that Congress intended that while an individual of the class named might convey his land by deed absolute and. indefeasible, without regard to the adequacy of the consideration, he might not convey it conditionally as provided. by. this mortgage."

In Chupco v. Chapman, supra, at p. 210, in construing the word "conveyance," as used in the Act of May 27, 1908, the court uses the following language:

"The term 'conveyance' is used in several senses. In the strict legal sense, the term imports a transfer of legal title to land. In the popular sense of the term, and as it is generally used by lawyers, it denotes any transfer of title, legal or equitable."

In Tollman v. Smith (Cal.) 16 Pac. 189, under a California statute which provides that a conveyance by a married woman must be acknowledged, it is held that a mortgage given by a married woman is a conveyance and must be acknowledged to be valid.

The Supreme Court of the United States has repeatedly held that the term "conveyance" includes mortgage. In the case of Beal v. Hale, 11 L. Ed. 865, in construing a Michigan statute, which was entitled, "An act concerning deeds and other conveyances," it was held that for the purpose of recording the words "other conveyances" included mortgage.

Conrad v. Atlantic Ins. Co., 7 L. Ed. 189, is quoted by Judge Campbell in the case of Frame v. Bivens, supra, and specifically holds that under the federal statutes a mortgage is a conveyance. In the body of the opinion the court said:

"Then again, it is contended on behalf of the United States that the priority thus created by law, if it be not of itself a lien, is yet superior to any lien. and even to an actual mortgage, on the personal property of the debtor. It is admitted that, where any absolute conveyance is made, the property passes, so as to defeat the priority; but it is said that a lien has been decided to have no such effect, and that in the eye of a court of equity a mortgage is but a lien for a debt. Thelusson v. Smith, 2 Wheat. 396, 4 L. Ed. 271, has been mainly relied on in support of this doctrine. That case has been greatly misunderstood at the bar, and will require a particular explanation. But the language of the learned judge who delivered the' opinion of the court in that case is conclusive on the point of a

mortgage. 'The United States,' said he, 'are to be first satisfied; but then it must be out of the debtor's estate. If, therefore, before the right of preference has accrued to the United, States, the debtor has made a bona fide conveyance of his estate to a third person, or has mortgaged the same to secure a debt, or if his property has been seized under a fieri facias, the property is divested out of the debtor, and cannot be made liable to the United States.' The same doctrine may be deduced from the case of United States v. Fisher, 2 Cranch, 358, 2 L. Ed. 304, where the court declared that 'no bona fide transfer of property, in the ordinary course of business,¯ is overreached, by the statutes,' and 'that a mortgage is a conveyance of property, and passes it conditionally to the mortgagee.' If so plain a proposition required any authority to support it, it is clearly maintained in United States v. Hooe, 3 Cranch, 73, 2 L. Ed. 370. * * *

"It is true, that in the discussions in courts of equity a mortgage is sometimes called a lien for a debt. And so it certainly is, and something more. It is a transfer of the porperty itself, as security for the debt. This must be admitted to be true at law, and it is equally true in equity; for in this respect equity follows the law. It does not consider the estate of the mortgagee as defeated and, reduced to a mere lien, but it treats it as a trust estate, and, according to the intention of the parties, as a qualified estate, and security. When the debt is discharged, there is a¯ resulting trust for a mortgagor. It is therefore only in a loose and general sense that it is sometimes called, a lien, and then only by way of contrast to an estate absolute and indefeasible."

This holding in the Conrad Case has been cited with approval by the Supreme Court of the United States in the following cases: Massingale v. Downs. 12 L. Ed. 906; Gibson v. Stevens, 12 L. Ed. 1130; Flagg v. Walker, 28 L. Ed. 1078; U. S. v. Stowell, 33 L. Ed. 560; Waterman v. MacKenzie, 34 L. Ed. 924.

It is contended that Oklahoma has held that a mortgage is not a conveyance, but is a lien. With this we agree; but as the Supreme Court points out in the Conrad Case, under certain conditions it is something more than a lien. However, on the theory that a mortgage is a lien, we have some authority to support our finding.

In the case of Pickens v. Gay, 121 Okla. 198, 249 Pac. 403, Justice Clark, in construing an attorney's contract with a full-blood Indian heir, which contract was properly approved, holds that a one-half interest of the lands recovered by an attorney was a valid contract and the attorney entitled

to a one-half interest in the lands so recovered. However, in passing upon the question of whether or not a sum of money due from a full-blood Indian heir to the attorney, was a lien upon the lands of the full-blood Indian heir, it was held that:

"The court had no authority to create a lien on lands inherited by Malinda Pickens, 'a full-blood Indian heir,' unless said lien had been specifically provided for in the contract approved by the county court."

This clearly indicates that if the contract had specifically provided for the lien, the same would have been valid.

Numerous cases are cited by attorneys for defendants in error, in which both state and federal courts have held that restricted Indian allotments can only be alienated or conveyed in the manner authorized by the federal statutes. This, beyond question, is the law, but is not in point in this case, since we hold that the provisions of the Act of May 27, 1908, have been complied with in the case at bar.

The mortgage in the case having been duly approved, the same was a valid and subsisting lien upon the property described therein and the holder entitled to foreclosure unless the subsequent good faith purchaser, without actual notice, takes the land free from the lien thereof.

This court has repeatedly held, and it is now an established rule, that when the holder of an instrument, entitled to be recorded, deposits the same with the proper officer for record, he has done his full duty and his rights are not to be defeated by the failure of the recording officer to properly record and index the same. Guaranty State Bank of Fort Worth v. LaHay, 98 Okla. 29. 224 Pac. 189, and cases cited therein.

The subsequent good faith purchaser doubtlessly is as innocent as the prior mortgagee, but not more so; one must lose because there can be no accommodation of rights in the premises. There is here applicable the maxim "between equal equities the law will prevail," or its companion, "between equal equities the first in order of time shall prevail," according to whether the estate of the mortgagee is legal or equitable.

Hence, it follows that the estate of the subsequent purchaser is subordinate to that of the prior mortgagee, and the judgment of the court denying foreclosure and canceling the mortgage should be reversed and the cause remanded for further proceedings

in accordance with the views herein expressed; and it is so ordered.

BENNETT, HERR, LEACH, and JEFREID, TEEHEE, HALL, and DIFFENDAFFER, Commissioners, dissent as to first proposition and concur as to the second.

Note.—See under (1) 31 C. J. p. 514. §79. (2) 41 C. J. p. 568, §526; 39 Cyc. p. 1739.